**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | | |
|---|---|---|
| **Secretary, Vermont Agency of Natural Resources,**<br>**Plaintiff,** | } } } } | |
| **v.** | } } } | **Docket No. 83-4-08 Vtec**<br>**(Administrative Order** |
| **John R. Wellman,**<br>**Respondent.** | } } } } | **enforcement proceeding)** |

**Decision on the Merits**

This matter came on for hearing after John R. Wellman ("Respondent") filed a timely request for a hearing and gave notice that he contested the April 20, 2008 Administrative Order ("Order" or "AO") issued against him by the Vermont Agency of Natural Resources ("ANR"). The Order alleged that Respondent had committed violations of the Vermont Wetland Rules ("Wetland Rules"), as well as a previous Emergency Order issued by this Court, based upon a similar wetlands violation allegation.

The Court thereafter conducted a merits hearing on May 21, 2008. Respondent appeared at the merits hearing and represented himself; ANR was represented at the hearing by John Zaikowski, Esq., an ANR staff attorney. At the close of evidence, the Court upheld the Order, directed ANR to file a supplemental memorandum, and provided Respondent with an opportunity to reply to that post-trial memorandum. Based upon the relevant evidence presented at trial, the Court renders the following factual and legal determinations, including in regards to ANR's request for reimbursement of costs, imposition of penalties, and injunctive relief.

**Factual Findings**

1.      Respondent owns about 1.6 acres of developed land located at 3265 Vermont Route 5, also known as the Coolidge Highway, in Guilford, Vermont ("Property"). The Property is bordered to the east by property owned by Cyril and Carolyn Heile and to the north by property formerly owned by Ralph Winchester. A small stream runs north along the eastern border shared by the Property and the Heile's property ("eastern stream").

2.      The Property contains a wetland mapped on the Vermont Significant Wetland Inventory Maps ("VSWI Maps") and is therefore a Class II wetland under the Wetland Rules. The wetland

is hydrologically connected to—and part of—a larger wetland complex located to the north of the Property.

3.       In May 2004, ANR investigated a claim that Respondent was placing fill and dog kennels in the wetland on his property in violation of the Wetland Rules.  That investigation resulted in an application to the Environmental Court for an Emergency Order ("EO").  The Court issued the EO on July 6, 2004, after an evidentiary hearing in a prior proceeding (ANR v. Wellman, Docket Number 101-6-04 Vtec), based upon the Court's conclusion that Respondent's activities violated the Wetland Rules.

4.       Respondent appealed the EO to the Vermont Supreme Court, which affirmed the EO in late 2004.  ANR v. Wellman, No. 04-314 (Vt. Nov. 10, 2004) (unpublished mem.).[1]  ANR subsequently filed a contempt petition after Respondent failed to comply with the EO.

5.       After an evidentiary hearing, the Court issued a Contempt Order on May 25, 2005. Respondent subsequently applied for and obtained a Conditional Use Determination ("CUD") for the complained-of fill and dog kennels.  The CUD did not authorize any other activity within the wetland or its 50-foot buffer zone.

6.       On April 17, 2007, Environmental Enforcement Officer ("EEO") Tim McNamara visited the Property in response to a complaint of dredging work occurring in the wetland.  EEO McNamara observed from the Coolidge Highway that dredging work had occurred along the eastern stream and that earth material had been piled along the streambank on Respondent's Property.  EEO McNamara did not enter the Property or speak to Respondent at that time.

7.       On April 27, 2007, EEO McNamara returned to the Property with Wetland Ecologist Alan Quackenbush and Game Wardens Kelly Price and Rich Watkin.  EEO McNamara and Mr. Quackenbush walked the Property and observed several areas where dredging had occurred in the eastern stream.  They observed that shale material from the upstream (southerly) section and earth material from the downstream (northerly) section had been dredged and deposited along its bank.  EEO McNamara estimated this work extended approximately 300 yards.

8.       EEO McNamara and Mr. Quackenbush also observed earth material had been dredged from the wetland, thereby creating and enlarging a channel within the wetland.  This work occurred within Respondent's Property and terminated in the stream.

---

[1]  This unpublished memorandum decision is available at http://www.vermontjudiciary.org/upeo/eo04-314.pdf.  It provides a summary of Respondent's historical use of the Property.

9.      EEO McNamara estimated that this additional on-site work extended approximately 100 yards.  While walking the dredged and channelized areas, EEO McNamara used a global positioning device to collect data points for the purpose of determining the extent of the work.

10.      All of the observed dredging and channeling work appeared to have been done by hand. The dredging work in the eastern stream and channelized area caused the wetland to partially drain.

11.      Based on prior site visits, prior and current observations of the area, and consultation with the VSWI map, Mr. Quackenbush determined the eastern stream work occurred within the Class II wetland and its 50-foot buffer zone.  The dredging work conducted in the channelized area also occurred within the Class II wetland.

12.      During his April 27, 2007 site visit, EEO McNamara also spoke with Respondent on-site, who admitted he had done the observed channeling work approximately two weeks prior to the visit and the observed dredging work in the stream over the past several years, most recently in the fall of 2006.

13.      Based on EEO McNamara's prior investigation involving the dog kennels and observations made of the Property at that time, he offered credible testimony that the current work conducted by Respondent in the eastern stream occurred at some point after that investigation.  Respondent had not applied for or received a CUD for the current work observed, nor would he have been able to obtain one for the already completed wetland activities.

14.      Respondent has at no time sought reclassification of the wetland or an adjustment of its boundaries or the boundaries of its buffer zone.

15.      Following the April 27, 2007 site visit, EEO McNamara downloaded the data points collected from the global positioning device. Using Arcview, a computer mapping program, EEO McNamara determined Respondent's dredging work in the eastern stream extended approximately 850 feet.  The excavated channel work extended approximately 270 feet.

16.      The wetland in question is a palustrine forested wetland which contains red maple trees, sedges, and ferns.  The soils are organic in the upper part overlaying saturated mineral soil, with shale material below.  The wetland soils are saturated during part of the growing season.

17.      The wetland serves three significant functions as identified in the Wetland Rules.  These functions are water storage for flood water and storm runoff, surface and groundwater protection, and erosion control through binding and stabilizing of soil.

18.     Respondent has provided no credible response to ANR's claims.  While his efforts to raise and train dogs to assist in rescue efforts are noble and admirable, we are unaware of any legal justification for ignoring important environmental protection rules, even in light of Respondent's noble efforts.

## Discussion

These proceedings represent Respondent's third opportunity to contest and explain his alleged violation of the Wetland Rules.  The Emergency Order issued by this Court on July 6, 2004, as well as the Vermont Supreme Court's affirmation of that Order on November 10, 2004, and this Court's May 25, 2005 determination that he was in contempt of the prior Emergency Order do not appear to have had any impact upon Respondent's belief of entitlement to disregard the Wetland Rules.  We find credible the relevant factual foundation for the AO that ANR most recently issued against Respondent, and we received no credible evidence from Respondent that challenged that foundation.  We therefore conclude that there is a substantial factual and legal foundation for and do hereby find that a violation of the Wetland Rules has occurred and do hereby **AFFIRM** the April 20, 2008 Administrative Order issued by ANR against Respondent, under the authority conferred on this Court by 10 V.S.A. §§ 8012(b)(1) and (2).

Pursuant to 10 V.S.A. § 8010(b), ANR also determined and announced an assessment of penalties in its April 20, 2008 AO.  Once an AO is challenged before this Court, we are directed "to review and determine anew the amount of a penalty" by applying the same statutory criteria. See 10 V.S.A. § 8012(b)(4).  We therefore next turn to the statutory criteria of 10 V.S.A. §§ 8010(b) and (c) to determine anew what amount of penalty and injunctive relief, if any, are warranted in light of Respondent's Wetland Rules violations.

## Penalty

We are directed by § 8010(b) to consider the following factors in determining the amount of the penalty: (1) actual or potential harm to human health and the environment; (2) the presence of mitigating circumstances, including unreasonable delay on the part of the Secretary in seeking enforcement; (3) whether the Respondent knew or had reason to know the violation existed; (4) Respondent's record of compliance; (5) economic benefit gained by Respondent

4

from the violation;[2] (6) deterrent effect of the penalty; (7) actual cost of enforcement; and (8) length of time the violation has existed. We now turn to these individual penalty criteria.

### 1.    Harm to the Environment, 10 V.S.A. § 8010(b)(1)

The Secretary provided the Court with substantial evidence that Respondent's activities caused actual harm to the wetland. The wetland in question serves three significant functions. First, the wetland is significant for water storage for flood water and storm runoff by attenuating peak water flows and reducing scouring and erosion of stream banks. Respondent's activities in dredging and channelizing the wetland have reduced its capacity for flood water storage and reduced its ability to slow peak flows during flooding. Second, the wetland is significant for surface and groundwater protection because it enhances and protects water quality by removing sediments and organic matter. The wetland is located in a low lying area and provides a depositional environment for sediments and organic matter. By dredging and channelizing the area, Respondent has caused sediments and organic matter to have a greater likelihood of being transported downstream rather than deposited and removed in the wetland. Third, the wetland is significant because it serves to control erosion by binding and stabilizing soil. Respondent's activities have adversely impacted this function by exposing soil, thereby reducing the stability of the streambank and the channelized area.

By lowering the streambed level and creating and enlarging the channelized area, Respondent has also caused the wetland to partially drain. This has impacted the overall health of the wetland by altering its normal water level and flow. In addition, given that the wetland is hydrologically connected to a larger wetland complex, Respondent's draining of the wetland on his Property has negatively impacted the water table and movement of water throughout the larger wetland complex as well.

The work conducted by Respondent exposed close to 400 yards (1,200 feet) of streambank and wetland to degradation and destabilization. Respondent has offered no credible evidence to contradict ANR's credible assertions. We conclude that Respondent's violations of the Wetland Rules have caused real and recurring harm to the environment.

---

[2] Criterion 5 was applicable at the time these violations arose, as well as at the time that ANR issued its Administrative Order. As of July 1, 2008, criterion 5 was repealed and replaced by a similar provision in 10 V.S.A. § 8010(c)(2). See 2008 Vt. Laws No. 191, available at http://www.leg.state.vt.us/DOCS/acts.cfm?Session=2008.

**2.    Mitigating Circumstances, 10 V.S.A. § 8010(b)(2)**

We received little relevant evidence of the existence of mitigating circumstances in this case. We commend Respondent for his noble and admirable efforts at raising and training rescue dogs, but cannot perceive how these efforts provide a legal foundation for his disregard of the Wetland Rules and the surrounding environmental assets those Rules seek to protect.

ANR sought enforcement for the violations at issue within a reasonable time frame. The response timeline of ANR officials does not provide a basis for diminishing any penalties or injunctive relief otherwise justified by the relevant facts and the provisions of 10 V.S.A. § 8010(b).

**3.    Whether Respondent Knew or Had Reason to Know the Violation Existed, 10 V.S.A. § 8010(b)(3)**

The Respondent does not contest that he was well aware of the Wetland Rules and their applicability to his Property. In fact, his history before this Court and our Supreme Court, as well as his involvement in applying for and receiving a Conditional Use Determination for his prior acts on the subject wetlands provide an un-refuted foundation for our conclusion that Respondent was well aware that his actions were in violation of the Wetland Rules. Despite that clear knowledge, Respondent chose to continue his dredging and channeling work, with the specific and unlawful purpose of draining the subject wetlands for his personal use.

Respondent has previously been before this Court for violations of the Wetland Rules. That case resulted in the Court issuing an Emergency Order after hearing on July 6, 2004. Respondent appealed that Order to the Supreme Court, where it was affirmed on November 10, 2004. Respondent came back before the Court after failing to comply with provisions in the EO directing that he apply for a CUD. The Court issued a Contempt Order on May 25, 2005. Respondent ultimately applied for and received a CUD. Despite this history, Respondent chose to exceed the authority issued for conducting work on or around the subject wetlands.

This credible evidence, largely undisputed by Respondent, demonstrates Respondent's knowledge of the Wetland Rules and their purpose of protecting important environmental assets. It also served to put Respondent on notice that his property contained a regulated wetland and that various activities were either prohibited or required prior approval.

6

**4.**     **Respondent's Record of Compliance, 10 V.S.A. § 8010(b)(4)**

As discussed above, Respondent participated in two prior proceedings that resulted in court enforcement orders being issued against him. Respondent appealed the first of those orders to the Vermont Supreme Court, where it was affirmed. In spite of this history, Respondent was then found in contempt of the original order, after being advised by the Supreme Court that his appeal was without merit. Both prior court orders originated from violations occurring in the same wetland that is the subject of the current Administrative Order. The record before us reveals ample evidence of Respondent's knowledge of the applicable environmental protections and little or no record of his compliance, even in light of his knowledge. At best, the record reveals a conscious decision on Respondent's part that he need not abide by the rules and regulations in place to protect the surrounding environment.

**5.**     **Economic Benefit Gained from the Violation, 10 V.S.A. § 8010(b)(5)**

Neither party provided evidence that Respondent has gained an economic benefit from the violations found in this case. We therefore make no finding on this penalty criterion.

**6.**     **Deterrent Effect of the Penalty, 10 V.S.A. § 8010(b)(6)**

Given Respondent's knowledge of the applicable rules and procedures, as well as his prior record before the Court, we conclude that a substantive penalty is necessary to deter Respondent's future actions, as well as to provide sufficient notice to others who would contemplate replicating his violations. We further conclude that Respondent's conduct and presentation of evidence during trial indicated a complete lack of acknowledgment of the violations and exhibited an unwillingness to comply with any future order issued by ANR or this Court, unless a substantial penalty is imposed. We therefore conclude that a substantial penalty needs to be imposed against Respondent to deter him from committing additional violations in the future.

**7.**     **Cost of Enforcement, 10 V.S.A. § 8010(b)(7)**

ANR provided credible evidence, un-refuted by Respondent, as to its costs in securing Respondent's compliance. Specifically, we found credible and un-refuted the testimony and demonstrative evidence from EEO McNamara and Mr. Quackenbush, addressing the costs incurred for enforcement. EEO McNamara spent approximately 31 hours in connection with site visits, investigating and preparing the current case for enforcement, and in preparation for the

merits hearing. His hourly salary at the time of the investigation was $23.57. Mr. Quackenbush spent approximately 12 hours in connection with his most recent site visit and preparation for the merits hearing. His hourly salary is $28.00. Based on their testimony, the cost of enforcement is over $1,050.00.

**8.      Length of Time the Violation Has Existed, 10 V.S.A. § 8010(b)(8)**

Respondent conducted the dredging activities in question for some period of time following the 2004 EO, with the most recent stream dredging occurring in the fall of 2006 and dredging within the channelized area in early April 2007. We find it disheartening and disturbing that Respondent continued his dredging and channeling work within the wetland even after being repeatedly advised not to do so by ANR, this Court, and the Supreme Court. Respondent's activities, resulting in the violations highlighted in this most recent enforcement case, were conducted over a significant period of time.

For all of the foregoing reasons, we conclude that the imposition of a penalty of $7,000.00 for the violations, plus a directive to reimburse the $1,050.00 in enforcement costs, for a total penalty of $8,050.00, is warranted and necessary, in light of Respondent's actions.

**Remediation**

The Court has the authority to affirm an ANR order, or vacate and remand an order when the procedure contained in the order is not reasonably likely to achieve the intended result. 10 V.S.A. § 8012(b)(2). The Administrative Order in this matter requires Respondent to take a series of actions necessary to achieve compliance and to restore the wetland to the condition which existed prior to the violation. The directives are as follows:

> B.      No later than July 1, 2008, Respondent shall uniformly redeposit the dredged shale from the upstream section of the stream back into the streambed.

> C.      No later than July 1, 2008, Respondent shall remove the dredged earth from the downstream section of the stream and place it at an upland location on the property, outside of the wetland and its 50-foot buffer zone.

> D.      Respondent shall monitor the wetland for purple loosestrife and common reed (hereinafter "invasive species") for a period of five years from the effective date of this Administrative Order. No later than August 15, 2009, Respondent shall submit a written report to the Water Quality Division indicating whether growth of invasive species has occurred ("report"). Respondent shall submit a report no later than August 15th annually thereafter for the five year period.

8

E.　　　Respondent shall permit employees and representatives of the Agency to inspect the property for the purpose of verifying compliance with the terms of this Administrative Order and the Wetland Rules.

F.　　　Respondent shall promptly respond to the directives and requests for information of Agency personnel regarding the remediation of the wetland and management of invasive species within the timelines specified.

G.　　　Respondent shall comply with the Wetland Rules in the use of his property.

We conclude that the Administrative Order sets forth steps which are reasonably likely to remediate the damage and degradation the Respondent caused to the wetland. Paragraph B requires the Respondent to redeposit the dredged shale from the upstream section of the eastern stream back into the streambed. This will help to stabilize the stream. Paragraph C requires Respondent to remove dredged earth from the downstream section of the eastern stream and place it at an upland location on the property. This will eliminate the risk of the material discharging into the stream and help to re-stabilize the stream bank by removing loose earth. Paragraph D requires Respondent to monitor for and report any invasive species. This will reduce the risk of invasive species interfering with the functions of the wetland. We also find that Paragraphs E, F, and G help facilitate the other necessary remediation steps.

The evidence presented at the merits hearing indicated that the eastern stream runs north along the eastern border of Respondent's property and is located on the Heile's property. Mr. Heile testified that Respondent has permission to enter his property for the purposes of remediation. ANR also presented credible evidence regarding the channelized area and why Respondent should leave this area alone to avoid further impacts.

The procedure specified in the Administrative Order is reasonably likely to stabilize the wetland and the flow of water through the wetland, reduces the likelihood of sedimentation, and provides for future monitoring. The procedure is therefore reasonably likely to remediate the wetland.

## Conclusion

For all the reasons stated above, we conclude that Respondent has caused a violation of Wetland Rules §§ 6.2 and 8 and Paragraph A of the July 6, 2004 Emergency Order in Docket Number 101-6-04 Vtec. We therefore impose a total penalty against Respondent and in favor of the Agency of Natural Resources in the amount of $8,050.00, payable immediately. We hereby

9

**AFFIRM** the April 20, 2008 Administrative Order, subject only to the following reasonable extension of the deadlines imposed upon Respondent: the deadlines imposed in paragraphs B and C of the ANR Administrative Order are hereby extended to **Friday, June 12, 2009**; the deadline imposed in paragraph D is hereby extended to **Friday, June 26, 2009**; and the obligations imposed upon Respondent by paragraphs E, F, and G remain constant and continuing. Finally, we specifically direct that Respondent comply with paragraphs B through G of the Administrative Order within the deadlines revised by this Decision.

A Judgment Order accompanies this Decision. This concludes the proceedings before this Court in this appeal.

Done at Newfane, Vermont this 12th day of February 2009.

_____
Thomas S. Durkin, Environmental Judge